Ms. Morrison, before we begin, I just wanted to indicate for the purpose of the audience that Judge Henderson is actually here in spirit. She's very sick today, but she's listening in as we're going forward with the argument. Ms. Morrison. Chief Judge Garland, may it please the Court. The fundamental problem with Section 441C, whether viewed through the prism of the First Amendment or the Equal Protection Clause, is that a complete lack of fit between the asserted purpose of the statute and the means by which it is carried out. The purpose of the statute is to avoid the appearance of impropriety and possibility of corruption and this fit simply is not there. Are you then saying we don't need to look at this under the Equal Protection Clause? Are you abandoning that? No, Your Honor. We say under either or both. Well, the First Amendment analysis would be less sweeping, wouldn't it? I mean, the Supreme Court hasn't used the Equal Protection Analysis at all, right? It had a chance to do so in Davis and didn't. Why would we venture where they refused to go? Your Honor, they did use it in Austin. Of course, Austin was overruled on the merits. But in Austin, the Court first considered whether the statute at issue, the statute issued in Michigan there, was under-inclusive and over-inclusive. It rejected that and then went on to analyze the Equal Protection Claim that unincorporated associations were treated better than corporations. So it did reach the merits on the Equal Protection Claim and treated them separately. So we have some history. As far as whether one is more sweeping than the other, Your Honor, I suppose it depends on how you look at it. In one sense, if we prevail on our First Amendment argument, then if corporations are allowed to make contributions at all, which of course they're not under 441B at this time, they would also be permitted to make contributions as contractors. On the other hand, if we prevail on equal protection, the question of whether 441C could be amended to protect, to preclude individuals or corporations from making contributions would be left for another day. So I guess it depends on how you view the question of whether one is more sweeping than the other. Mr. Morrison, I have a sort of a general perspective question for you about the fit. As I read these briefs, it occurred to me this case is actually quite different from other contribution cases. There's no risk here that Congress is trying to accomplish some nefarious purpose like leveling the playing field or limiting the amount of money in politics or even protecting incumbents. This law is focused on government corruption, not even general corruption, but corruption just in the procurement process and it's focused and it only applies to people participating in that process and only while they're participating. So it seems that the fit is actually quite snug and it doesn't raise all these concerns that lurk behind the other contribution cases. And I'm wondering whether you think that's a fair description of what we've got or not. Well, I would first agree with Your Honor that this statute is different from all the rest because it's an absolute ban. Every other statute that the court has... Well, that wasn't my question. I know it's an absolute ban, but I'm curious to your reaction about the context I tried to put the case. Well, Your Honor... It seems different from other cases... It is... ...because of this. But I think it's different in another way and that is if you go back to the legislative history of this, the reason this was put in in 1940, it was put in at a time when we had Holmes' view that the government could forbid anyone from becoming a... If you wanted to become a policeman, you were essentially a second-class citizen. And the theory at the time was that if you were a government employee or in this case a government contractor, the Congress could forbid you from making contributions as a condition of you becoming a government contractor. That is no longer the law. It's clear that accepting money from the federal government as an employee, as a contractor or as a grantee... I agree with that. And so if we're talking about some sort of suspect motive, that's the suspect motive. But I don't think we have to show suspect motive. I think we just have to show that it's either under-inclusive and over-inclusive under the First Amendment. But to pick up on Judge Tatel's question, while the Holmes' view is not the current view, it is still the case that the government has authority to regulate its own workforce more fully than it can regulate private citizens. I agree. There's a tradition of ethics rules on government employees and contractors that are much more stringent. Why isn't this case better viewed as really a government ethics case than the kind of campaign finance case that we've seen in recent years? If the analogy is to federal employees, of course, federal employees are not limited in contributions. I understand. The attorneys from the FEC who are sitting here at my left are entitled to make contributions in any amount except to members of Congress. But there's a different package of ethics rules on government employees, as you well know, and a different package on contractors. But the basic point is that in terms of government ethics regulation, government employees traditionally, this is not some novel or outlier law, traditionally have been subject to much more stringent ethics regulation, and so too contractors to some degree as well. And that history seems to be something that we should pay particular attention to. I agree that government employees and federal contractors can, in appropriate cases, be subject to more strict regulation than we would apply to ordinary citizens. But as cases like NTEU show, there are plainly limits on what federal employees can be made to do or not permitted to do. And the question here is, is the fit close enough? And I suggest to you that it's not. Dr. Morrison, you're looking at 10 or maybe 11 government employees who cannot make a contribution of any kind to any federal employee, to any federal candidate or campaign committee. Is the code of conduct which bars each one of us from making contributions unconstitutional? I have not considered that question, Your Honor. Now's your chance. First, I would say, Your Honor, it doesn't make you a felon if you were to do that. I didn't take it that you're relying on that. Does that relieve you? I feel a lot better. Well, the court has pointed that out on several occasions, Your Honor. Justice Kennedy most recently in Citizens United made a big important point of that being a felony. So now that's what you rely on? That's the difference? No, I didn't say that, Your Honor. I guess I would have to ask a question. I would say that the appearance of giving money to federal candidates or persons before whom you may appear is... Well, there's no corruption issue. There's no chance that anybody we give money to is going to help with the corruption since we all have lifetime appointments. So the real purpose behind the ban on our own giving is one Judge Kavanaugh just mentioned, which is the importance of the judiciary and likewise the civil service to appear nonpartisan and to not be appearing to be contributing to campaigns. So isn't that yet on top of the... In addition to all the things that Judge Tatel said, which makes this case different from the usual case, this is also different from the usual questions about whether bans on campaign contributions are First Amendment problems. In that, they imply, as Judge Kavanaugh said also, to government employees. So we have not only the concern about quid pro quo corruption and the appearance thereof, but also the concern about the neutrality of the civil service. I agree, Your Honor, that the neutrality of the civil service and the judiciary are very important and would sustain it. Congress has made a decision with respect to the neutrality of the federal service that banning contributions is not an essential element. Well, it has done other things which may be more strict with respect to federal employees, as you know, under the Hatch Act. So there's a different kind of balancing here, and it's given them the protection of the Merit Systems Protection Board, which is not available to the independent contractors. So if you're saying that Congress has made this determination and we should defer to it, then you've pretty much talked yourself out of court, haven't you? Well, Your Honor, if Congress had actually sat down with the Federal Election Campaign Act in mind, with the very many changes in the federal contracting process that have taken place from 1940, and it actually sat down and said, this is the balance we're striking, as it did with the Hatch Act both in 1939 and again in 1993 when changes were made, we might have a different situation. But they did that. This law was precipitated by a scandal in the 40s. Yes, Your Honor. And Congress banned all contributions by contractors, and since then the only major change is that government contracting has become a far larger percentage of government work. I mean, if anything, it's a much greater concern, isn't it, today than it was many years ago? Well, Your Honor, I would point out two things. First, there was a major change in 1976 when Congress amended Section 441C to expressly permit corporate contractors to establish PACs, which must be established under their own name. They are funded by the corporations who are contractors, and those PACs can make the identical contributions that my clients cannot make. In addition, corporate officers can make contributions. Corporate shareholders can make contributions. Mr. Morrison, that could be a problem under strict scrutiny. I know you're arguing for strict scrutiny, but there isn't any precedent, is there, that contribution limits should be reviewed under strict scrutiny? We look at this under a closely drawn analysis. Yes, Your Honor. I would agree that there is no Supreme Court precedent on strict scrutiny under the First Amendment. But I would point, Your Honor, that the most recent case, the McCutcheon case, while not directly on point, demonstrates clearly that the closely drawn standard has great teeth, as the Court said in that case, that it was requiring an objective because there was a substantial mismatch. But in that case, in McCutcheon, you were regulating speech of the general citizenry. And as you know, it's been discussed, this is a particular type of regulation of individuals who are in close working relationship with the government, working for the government under contracts, and it applies only during the time they try to acquire that contract or are serving under that contract. And so what I'm trying to figure out is how do cases like Board of County Commissioners v. Do they influence the closely drawn scrutiny in a way that would give greater deference to the government? Or should we be applying those standards instead of closely drawn, the more balancing statute? How do those two lines of authority interact in this context, which is very different than the factual context of McCutcheon? I agree with Your Honor that there are many strands of Supreme Court jurisprudence that are at issue in this case. And this case requires the court to deal with the intersection of them. But I think that in the campaign finance area, because it's First Amendment and, as we say, also equal protection, that the court has been very solicitous of the right to make any contributions at all. And so, as the court said in the Beaumont case, while we don't apply strict scrutiny, we will look at the nature of the activity being regulated, hear a ban. We'll see how broadly it sweeps. We'll look at other alternatives. In Beaumont, the corporate PAC could make the contributions. Here... But when have they been solicitous of contributions by individuals either working for the government or under a contract with the government? Any more solicitous beyond the balance struck in Umber? I agree with Your Honor that the court has not faced that question, because under the Hatch Act, as far as employees are concerned, they are permitted to make contributions. And Umber was contractors, not employees. I know of no case in which the First Amendment on a contractor. The NASA case, which we cited in our brief, the court said, with respect to background investigations, since contractors and employees are alike, we should treat them similarly. And that's what we're asking for here. Treat them the same as the employees. Yes, there are differences. Yes, the Merit System Protection Board protects employees, but there are provisions in the government contracting laws that give contractors who think they have been treated unfairly the right to go to court to make protests. And they're not exactly the same, because they aren't the same. Citizens United, which is obviously a pro-free speech decision, specifically carves out, from your perspective, carves out letter carriers as a precedent that it's approving of. And letter carriers, of course, was a case that said federal service is different. And the line quoted is, federal service should depend on meritorious performance rather than political service. That seems to be exactly what the government is relying on here. And that's cited with approval in Citizens United. But, of course, there was no ban on employees making contributions in letter carriers. And the general proposition that employees can do regular... There was a ban on various First Amendment speech and association activities. Yes, Your Honor. It's just a different kind of speech and association. But the basic principle is still cited there with approval in Citizens United. I don't disagree that there is authority for the Congress to regulate the activities of contractors and employees differently from what they would regulate the activities of ordinary citizens. Do you think Congress could ban federal employees from all contributions? I do not believe so, Your Honor. Why not? Because I don't think that the justification is there for it. If we're talking about low-level federal employees, somebody who works as a custodian or a secretary to make contributions, it seems to me that that would be excessive under the First Amendment. It would be overly broad. And, of course, we would also look to see whether it's under-inclusive as well. Examinations that the Supreme Court has insisted upon making when we're regulating speech in the First Amendment... Can I ask you about under-inclusiveness? Because some of the forceful submissions you made in your brief had to do with under-inclusiveness, and in particular about this question that you started to talk about with respect to corporate officers. So part of your argument is that it makes no sense to draw the line in the way the statute does because it includes contractors, but it doesn't include the officers of corporate contractors. And also the political committees, which are required to bear the same name and are funded, and so forth. So I guess one question I had about that, though, is there is something a little bit odd about a doctrine that says that this is a violation of the First Amendment or the First Amendment views through the Equal Protection Clause because it doesn't restrict enough speech. And, in particular, I looked at the Green Party decision, which I know the parties are both familiar with from the Second Circuit, and that involved a contribution ban that did extend to corporate officers. And what was interesting about the analysis in that case is the court sustains it, but barely. And they say, it seems like it's almost overbroad in order to sweep within this corporate officers, but we're going to hold our nose and we're going to sustain it. Now it seems kind of strange to say, well, that was barely constitutional, but it turns out it was actually constitutionally compelled. The Green Party case, as I read it, Your Honor, stands in part for the proposition that it was sustainable because they closed the loophole. The Green Party said it would make no sense, the court said, to ban corporations from making the contributions but to allow the owner of the corporation, who has the same name as the company... I didn't read the decision that way. I thought what they said was that it might well make sense. We are very troubled by the extension of the law to cover corporate officers as well because it restricts more speech. But because the legislature gets substantial leeway in this area, we're going to sustain it. But the flip side of that, it seems to me, is that the legislature should have freedom to decide that it doesn't want to restrict more speech by extending the law to corporate officers. Well, of course, there is another distinction in that case, and that is that the law at issue there was in response to a series of scandals. The legislature sat down and consciously drew careful lines, precisely the kind of considered legislative judgment that we don't find here. Bill doesn't go to the question of under-inclusiveness. The classic statement of the closely drawn rule, a test, which comes from Buckley and is repeated in McCutcheon, says this, may be sustained if the state demonstrates a sufficiently important interest in employees' means closely drawn to avoid unnecessary abridgment of associational freedoms. To the extent that the statute is leaky and allows more First Amendment freedom, it does not appear to be inconsistent with the test that the courts employed for closely drawn. And in Blount, we specifically said that under-inclusiveness counts only if essentially it doesn't serve the purpose at all. Well, of course, the quote you have for both Buckley and from McCutcheon are not cases in which anybody was making an argument that there was under-inclusion of persons who are similarly situated, such as we have here with grantees. People trying to get ambassadorships. Yes, but the cases that talk about what you're essentially raising as an equal protection argument are all, as far as I can tell, ones in which there's a concern about what the court repeatedly says is, quote, invidious discrimination. That is, discrimination where you have some reason to be suspicious, that Congress is favoring incumbents over non-incumbents. You don't actually think that what's really going on here is that Congress is trying to benefit corporations over individual contractors. There's absolutely no evidence of that kind of invidious discrimination. It may be a mistake. It may be a leakiness. But it's not invidious discrimination. I would agree with Your Honor that in that sense there's not invidious discrimination. But I think the First Amendment and the Equal Protection Clause require more that if it's discriminatory in fact or if it's vastly under- and over-inclusive in fact, that that's enough. That in the area we're dealing with First Amendment, fundamental rights... Why under-inclusiveness? I get your point about over-inclusiveness. But if the purpose, as Chen Vossen was pointing out in the Green Party case, is to avoid unnecessary or more restrictions, why doesn't a statute that just doesn't yet include those restrictions, isn't that a better statute from the First Amendment point of view? The under-inclusiveness, Your Honor, is there as a check to be sure that the legislature has carefully considered the question and is not doing things inadvertently to be sure that the asserted purpose is actually being carried out. Can I ask you on under-inclusiveness? Yes. One case that wasn't mentioned a lot in the briefing but seems to bear on it is Broderick. And in Broderick, which was the state law variant of the Hatch Act, as you know, the decision came down contemporaneously with letter carriers. There was an equal protection claim in that case that said that the state Hatch Act provisions were under-inclusive because they only encompass classified employees and didn't encompass unclassified employees as well. And the Supreme Court just dispensed with that in a footnote and basically said there's this equal protection claim, but A, the legislature has to have substantial leeway in dealing with it, and B, it would seem strange to restrict even more speech and the legislature should be given freedom not to go the extra mile and restrict any more speech than necessary, which now you have a Supreme Court decision that addresses an equal protection under-inclusiveness claim in an analogous context. And I'm just wondering what might be the distinction between the mode of analysis that the Court applied in that case and what you would want us to do here. I don't make the argument that the under-inclusiveness aspect of this is as significant as the over-inclusiveness that the fact that statute is overly broad. I also recognize that, of course, in Broderick there was no ban on the activity which we're dealing with here, which is the making of contributions. Furthermore, of course, at that time the statute had been recently enacted. There was a ban on a lot of things in Broderick. Yes, yes, but most of them had to do with activities being conducted by civil servants while they were on the job. This activity we're trying to do here is off the job. The irony of this is that the FEC says, well, you know, your First Amendment rights aren't completely restricted. What you can do is you can hold a fundraiser at your house. You can have the fundraiser. You can invite anybody you want. You can have them raise hundreds of thousands of dollars. The people can be bundlers there seeking to get ambassadorships, and you can spend $1,000 of your own money on invitations, food, and it doesn't even have to be reported. That seems to me to give lie to the notion that this statute is really all about appearances. Do you think there's secretly something going on here? I do appreciate the role of strict scrutiny in ferreting out the true motives of Congress. You don't think their true motive, however imperfectly they've attempted to resolve it, is preventing corruption and appearance? I agree that that's what they were trying to do, but the method was a blunderbuss. That's not the same thing as saying... Closely drawn, Your Honor. You keep saying their putative motive, their stated motive, as if you don't believe that that was really what their motive was. You don't actually think there's a suspicious invidious motive here, do you? No, I agree that they were trying to stamp out corruption. The question is whether the First Amendment allows them to do this in this manner, and I say to you that the closely drawn standard certainly does not permit it, as the Supreme Court has interpreted in all of its recent cases. Let me ask you a related under-inclusiveness argument, and it's about the LLCs. An individual contractor could create an LLC, right? Yes. And then spend as much money as he or she wants, correct, on political contributions? The answer is, if the contractor was a person like Wendy Wagner, who was essentially a part-time consultant for a government agency, or was an expert witness, someone like that could create an LLC. The persons like Mr. Miller and Mr. Brown almost certainly could not have done this through the LLC, or if they had done it through an LLC, if the agency would have allowed them, they would have had a substantial sacrifice. That is, as individuals, they have the agency paying the employer's share of their federal feud attacks, FICA tax, and Medicare. In addition, they get vacation benefits and sick leave, which obviously a corporation could not take. So clear to me, Mr. Martin, excuse me, let me just finish this equal protection question. So your point is, in the equal protection side, I take it that this LLC is not a realistic option. That is correct, Your Honor. Okay, but switch to the First Amendment side for a minute. Doesn't that hurt your First Amendment case? Because if creating an LLC is not a realistic option for employees, then that doesn't undermine the legitimacy of the government's proffered interest here. You don't have a lot of government contractors creating LLCs and going ahead and making political contributions. You don't have that kind of under-inclusiveness. I agree, Your Honor, that the inability of individuals who are essentially working as employees to be LLCs in that capacity does not affect my First Amendment argument. Thank you. Can I clarify? Go ahead. I'm curious, Mr. Martin, do you really, you say early in your brief that the term committee in this law could extend to the NRA or, you know, EMILY's List or these other groups. Is that really in play in this case? Well, we believe it is. It demonstrates the over-breadth of this law For example, the Preston case from the Fourth Circuit, they upheld a ban on lobbyist contributions, but there was an out. They could make contributions to a political committee. Those are obviously examples, but there are other examples of over-breadth. For example, minor parties, candidates for the Green Party or new parties that have no chance of getting elected at all. Well, that's a slightly separate question. I thought that the term committee had been pretty consistently interpreted to refer only to groups that have the major purpose of electing a candidate. Yes. You sort of throw another wrench in the work that makes this seem like it has a very different suite. I want to be clear about that, Your Honor. There are two kinds of committees that might come into play. One are the independent committees that make only independent expenditures, sometimes known as super PACs or less so when they're smaller. Those are not at issue here. None of my clients wants to make a contribution to them or anything like that, but there are other committees. The NRA, for example, has a PAC. It is not a corporate PAC. It's not a contractor PAC. The NRA committee makes contributions in elections. That is the kind of committee to which my clients might want to make contributions and it is banned. Are those super PACs? Is that a super PAC? No. I believe the term super PAC. It's not defined in the statute. My understanding is that those are PACs that make independent expenditures and can do so without limits based on Citizens United. I only ask because in the district court, the district court said that you expressly said your clients do not want to make contributions to super PACs. That is independent expenditures. They neither want to make independent expenditures themselves. They don't want to take out ads in newspapers and they don't want to give money to organizations that are taking out ads. What exactly do they want to do that relates to independent committees? They want to make contributions to candidates, to political parties. What about committees? They have said that they may wish to do that. They have not done so. May wish to? It looks like from what was said in the district court and in your brief that that issue isn't before us. You say in your footnote in your brief that your clients don't want to. In a district court, you told the district court that the clients don't want to make contributions to super PACs. What exactly, other than political parties and individual politicians, what can we have? There may have been some miscommunication between us and the district court on that. My clients did not expressly indicate they wanted to make a contribution to an organization like a Right to Life Committee or the NRA or Planned Parenthood that makes direct contributions. That is a political committee that's covered by 441C. Mr. Miller, who is the only surviving plaintiff here, does not mention committees. The other two, who now appear to be moot and who are standing are not really defending, do mention committees. Miller just says, I would like to provide financial support for candidates running for federal offices and or their political parties. So I understand that you have an argument that there's not a way of relieving the over-inclusiveness by giving to an issue PAC that can then contribute. But I don't understand that you have standing or that your clients have argued that they have any intention of contributing to the kind of things you're talking about, EMILY's List, NRA, Sierra Club, whatever you're talking about, which then would re-contribute to candidates. Is that right? That is correct, Your Honor, but we believe first that there is an over-breadth argument that we're entitled to make in this context. Second, Your Honor, I would say on the standing of both Mr. Brown, who is temporarily not a government contractor but may well be a government contractor. Mr. Brown's statement you sent in says something like it's possible. Well, he's going to look for employment, Your Honor. Yeah. And he's been there before. It's in January. It's certainly possible that he may be again. And the same for Professor Wagner. Those are almost always the trigger word for us saying no standing. And Mr. Morrison, it's interesting. I mean, I know that he would be out of the case, but you really put a lot of emphasis on the analogy between contractors and employees. But it seems that, in fact, some of your clients illustrate exactly one of the big differences, which is that contractors tend to be in and out, in and out of service. And that is really... it exacerbates the risk of pay-to-play, of just the kind of quid pro quo corruption that is really at the heart of what this provision is about. So somebody who has a short-term contract and then turns around and needs work again, that's the dynamic that's at the heart of this effort. With respect to both Mr. Miller and Mr. Brown, Your Honor, I see my time is about to expire. May I answer the question? Of course. Both of them were, of course, long-term employees and then many years under contracts. They were hired not because of anything they did politically. They were hired because their employer knew who they were, appreciated their work, and wanted them brought back on the job. Professor Wagner was hired not because she put in a bid, but because the administrative conference in the United States went out and found her. I understand the fact. And asked her to do that. Yeah, I understand the fact of your case. Of course, I want to be clear that there are multiple variations on these statutes, but the government has hundreds of thousands of contractors. USAID has 700 people. Morrison, would you acknowledge that the ban is a better fit when it comes to contributions to candidates than it might be for contributions to political parties? Well, of course, it depends which candidates we're talking about. If we're talking about a minor party candidate who has no chance of being elected to an office, if we're talking about incumbents sitting on the Armed Services Committee, that would be a better fit. But the problem here is, unlike this Court's decision in SEC against Blount, where the SEC carefully fit the pieces together and made a considered judgment as to whether real dangers were and where they were not, this statute doesn't come close to satisfying the Court's test that there would be a substantial matching of the goals and the means chosen to effectuate them. Are there any other questions from the bench? Okay, thank you, Mr. Morrison. Thank you, Your Honor. Mr. Chief Judge, and may it please the Court, government contractors pose an acute danger of corruption and partisan disruption of efficient government functioning. Could you start with a standard review? I'm particularly interested in your brief where you say that you cite Beaumont, and you say that our standard review is relatively complacent. Yes, Your Honor. How do you square that with McCutcheon? That is as compared to strict scrutiny. Do you agree? Are you accepting then, you're not arguing that we were to do something other than the standard set forth in McCutcheon? That's correct. It's narrowly drawn scrutiny, which the Court has indicated is a lesser degree of scrutiny than strict scrutiny, and to which courts are to defer to legislative judgments. So in your judgment, what does that leave us free to do that we could not do under strict scrutiny in this case? What does that give us the freedom to do here? So the Court doesn't need to assess whether there are, whether Congress has employed the least restrictive alternatives. Instead, it must determine whether the purpose is substantially mismatched with the end served. I'm sorry, you're saying mismatch is what we look at or not? It is what you look at. So all you determine is that it is close. Right, there has to be a reasonable fit. It has to be proportionate to the interests that are served, and the interests only need to be important interests. Do you agree it's a rigorous review, right? Yes, Your Honor. Okay, all right. Are we allowed to consider any other government purposes beyond corruption and appearance of corruption? I mean, you're arguing that there are other purposes at play here, you know, the merit-based selection, et cetera. But can we really consider that under governing Supreme Court precedent? Yes, Judge Wilkins. It is true that the Supreme Court has said on a number of occasions that when implementing campaign contribution limits, that the appearance of corruption and corruption are the only interests that can be served. But those we're addressing generally applicable contribution limits across the board. Here where a discrete class of people are targeted and there's a particular purpose for imposing contribution limits on that discrete class, that other important interest of a merit-based workforce is appropriate. And as Judge Kavanaugh indicated in Citizens United, which was one of those cases where the Supreme Court indicated that generally when restricting campaign funding, appearance of corruption and corruption are the only interests that can be served. The court specifically noted that the letter carriers mentioned an interest in effective government functions and that the Congress has a right to ensure that those functions can be served without partisan interest. So are we looking at something a little bit different from just straight up McCutcheon? I mean, letter carriers and ports are kind of a pickering analysis with more fulsome consideration of governmental interests. Is that where you also rest your case or not so much? No, I think the closely drawn scrutiny is comparable to the unbear approach. So closely drawn scrutiny, as we saw in McCutcheon, there does have to be important government interests and Congress does have to employ them in a means that permits some expression of the employee, just like in the unbear approach for contractors and pickering for employees. Congress does have to take into account the rights of employees and they have to have some ability of expression. So I think the closely drawn scrutiny, I think the court can easily harmonize the closely drawn scrutiny in the campaign contribution limit context when it's assessing the interest of not allowing coercion of employees or contractors and a merit-based workforce. I think the two are similar. Is there any evidence that parties and committees are somehow involved in the awarding of contracts? In the award of contracts? There is extensive evidence that they can be involved in quid pro quos. For example, the very scandal that led to the passage of what I'll refer to as Section 441C, even though it's been recodified, involved the Democratic National Committee. In 1930 elections, party agents went around the country armed with lists of contractors. How do you respond to the McCutcheon argument there, and that is that things have changed since 1940, that we have a completely new regulatory landscape that affects that in a significant way? What's your response to that? This isn't a case where intervening changes in the law have made it so that the function of Section 441C is no longer being served in any meaningful way. Congress has paid a lot of attention to this, and there have been some measures to make sure that contracting, in some instances, is done through competitive bidding and by professional contracting officers. But a large portion of the contracting workforce does not occur through those competitive processes, and the incidence of contracting is a growing phenomenon. So the danger overall is growing. In the 1940 scandal, do you have any other examples where perhaps parties and committees have been implicated in the award of contracts? Yes, Your Honor. So there's been extensive experience of this within the states, and states have responded. So, for example, in Connecticut, Governor Rowland, who was- And at the federal level? I mean, you know the argument that the states are differently situated, that the contract officers there are more political than at the federal level. I'm talking at the federal level. Do you have any federal experience where parties and committees, political committees are involved in the awarding of contracts? Well, there is less evidence at the federal level. Is there any beyond the 1940s? There is, but I should point out in Congress, and the Court has instructed that this should be taken into account, the ban has been in effect since 1940, so the same kind of evidence we would not expect it to happen at the federal level. So at the federal level, it has to happen in more indirect ways, and it has. For example, one of the most notorious scandals involving Jack Abramoff and Congressman Ney. One aspect of that was a foreign government gained a contract to install the wireless service in the United States House of Representatives, and that money was funded through a contribution to a charity run by Jack Abramoff, and then Abramoff used those funds- Wasn't that a corporate contractor, though? I'm talking about an individual contractor here. Those are the plaintiffs we have before us. It was, but the danger can happen in either case. So it's not the case that the Congress- It can happen, but I'm asking, has it happened? Well, certainly at the state level, for example- But not at the federal level. At the federal- Well, it has not necessarily the actual contractor, because they're not allowed to, but persons associated with the contractor have. For example, Congressman Randy Duke Cunningham, another one of the most notorious scandals. Money was funded by him to several candidate committees, by a defense contractor, Mitchell Wade, and other individuals, to both Randy Duke Cunningham and other candidates and party committees. So you're not going to find an example of the person who is the actual contractor at the federal level having given a contribution to a party committee or a non-candidate committee. But again, at the state level, Governor Rowland, some of the money that was used to get him to award a government contract went not only to his candidate committee, but also to political party committees. Do you think Congress could ban federal employees from making contributions consistent with the First Amendment? I do, and it has. Federal employees were not allowed to make contributions to incumbent members of Congress until 1993. So if Congress decided to reinstitute that ban, of course, the court would need to actually look at the existing evidence, build a record in the way that we- How about grant recipients? Same answer there. I'm not sure. It's something that, again, there would have to be some evidence of danger. So there hasn't been a record- A record. Why- And there are lots of mismatched questions here, and I don't know that that dooms your case. But, for example, the contractors, the individual contractors, are still allowed to raise money and bundle money. And you know and I know that the people who bundle and raise money are much more valuable to the parties and the candidates than one individual contribution. What do we do about that seeming gaping hole in the statute? How do we approach that? Well, I think Congress attacked forcefully the most direct danger, and that is money coming from the person who is actually receiving the contract being used to make a campaign contribution. So it is true that other means of expression were allowed, including raising money for candidates without spending extensive money to do so. But that is consistent with Congress's charge here, which is to make it closely drawn and not go beyond further than- And that raises Judge Kavanaugh's question. Let me just follow up with that because that raises the other side of the LLC problem. In response to the plaintiff's equal protection argument, the FTC said setting up an LLC is not onerous. So under the law, all of these individual government contractors could set up LLCs and then go and make all the political contributions they want. And doesn't that raise some serious questions about what this ban is actually doing? I don't think so, Judge Tatel, and it is true that perhaps Congress could go further. No, no, that wasn't my question. My question is, so your argument is, the commission's argument is, we need to prevent-Congress's goal here is to prevent government contractors from making political contributions. Well, according to your theory and the record of this case introduced by the commission, any independent contractor can willy-nilly make any contribution he or she wants simply by setting up an LLC. And the record also shows that agencies are indifferent to whether or not they're contracting with the individual or the LLC. And so doesn't that raise some serious questions about the legitimacy of this claim, if it can be end-rounded so easily? I don't think so. That notion challenges the very status of separate corporate personhood. So while it does permit a person to set up a separate entity and have that entity enter into the contract, that means that there are some consequences for that. So that entity then is the one that has to pay taxes. You say it's relatively-it's not onerous to do this. That's your record. That's your evidence. The other side says it's difficult. Yes. In their equal protection claim, they said it's expensive. You didn't say that. The commission said it's easy. It's easy, but there are some consequences. So Congress has attacked the most dangerous possible exchange, and that is the legal person who actually is getting the money from the government cannot make the contract. And by permitting persons to set up LLCs, so that at least the person that actually could be offering-the legal person who actually could be offering the quid in exchange for the quo can't make the contribution. And I would say just I think appellants have refined their- If I'm a contractor, I can set up the David Tatel LLC and contract with AID through the David Tatel LLC, and I can go ahead and make all the contributions I want in my name. Yes, so-but that doesn't mean that Congress-the ban that Congress put in place is not serving any purpose at all. No, it just makes you wonder if it's this easy to escape it what the ban has accomplished. Well, as I said, it does attack the most dangerous exchanges. The problem with the statute, I think, is that it doesn't just attack those most dangerous situations. It's a very broad categorical ban on donation of even a nickel to even the NRA committee or a right-to-life committee or any of those types of organizations. And so on the one level, you have Congress coming in saying, there's a real problem here or a real risk of bad appearances, and so we have to come in full bore with a comprehensive ban. But it's easy to get out of. And so that's what's hard to reconcile. You can't, on the one hand, say they're getting the worst thing, when in fact they got an awful lot more than the worst thing, and then go, it's okay to have this technical distinction. That's a very hard thing for me to reconcile. How do I deal with that under closely drawn scrutiny like they articulated in McCutcheon? So Congress attacked one part of the problem very forcefully, but left the scope of the statute approach that in a very measured way. So in the Buckley case, in the Blunt case of this court, this under-inclusive analysis that made clear that Congress doesn't have to go as far as it could. So provisions addressing people who own the corporate contractors or have shareholders or substantial owners, legislatures have included provisions. The Green Party case, for example, the Blunt case did include some of those provisions. Preston v. Leak, a lobbyist case, included some family members, and those were upheld. So Congress could have gone that far. But suppose that Congress says, we think these two situations raise the same problem with respect to the appearance of impropriety. The two situations being the stuff that we're covering, contractors and the layer around contractors, say officers of corporate contractors. We think they raise the same issue with respect to appearance of propriety, but nonetheless we're going to cover the first one. And there's no explanation or even attempted explanation or even after-the-fact explanation by the lawyers seeking to defend the law as to how you could draw that line. Is your position that it's still okay for Congress to do that because they can decide not to restrict more speech always? They can decide to stop short and attack it one step at a time even if the second step presents the same problem? Well, I think it would only be struck down if the provision, as this court said in blunt, cannot be fairly said to advance any genuinely substantial government interest. And I don't think we're at that point. I mean, we probably wouldn't all be here, right, if the individual contractors here, if it was that easy. And appellants have refined their position at argument today. In fact, some contractors can't just set up LLCs. They're expert at deposition. Does that make it better or worse, right? You have a subset now who can't do LLCs, but everyone just like them who can do LLCs is golden under this statute. And we'll just pretend that there's really no real problem if the donation to Congressman so-and-so on the Armed Services Committee comes from Patricia Millett, LLC, rather than Patricia Millett, contractor. Well, like all these questions, when there's both an over-breadth challenge and an under-inclusive analysis, it's always going to cut one way or another, right? But those doctrines are not some sort of solemn charybdis that Congress is going to bump up against one or the other. It has a reasonable berth to set reasonable restrictions. I understand, but when you have something... I'm sorry. Go ahead. Doesn't this go to the question of whether it's closely drawn? In other words, if you can work your way around this by simply being in the corporate form, then why do you need a complete ban? Why wouldn't a limit be good enough? Well, because as the Green Party of Connecticut case said, any dollar amount can raise an appearance of corruption concern. So any dollar amount from the legal person that is actually making the contribution does raise appearance concerns. But the fact that there are... I mean, the notion that the ability to set up LLCs completely undoes the regulation, I mean, that would be an attack on the very notion of corporate personhood. I mean, once you set up a separate entity, the individual is no longer liable for all the misconduct. There are rules. You know, the taxes are paid by the LLC. There isn't really a difference in this context that would make it that separate legal personhood so unique here that it means the government is not serving any substantial government purpose whatsoever. Mr. Fieler, there's another under-inclusiveness that's a little concerning, which is that, you know, in one form of quid pro quo, you give and give and then you get your contract. And that's not covered, right? Because you're only covered if you're already negotiating. You, the contractor, are only covered if you're already negotiating for or under a contract. Isn't that a kind of under-inclusiveness that also really undercuts the congressional interest in combating corruption? You mean if the contracts occurred at some previous point in time? No, if I'm a wannabe contractor and I think, well, you know, who's in power, who has some influence? I'm going to give to that office holder. Give, give, give. And then my application goes in and I call the, you know, constituent services and say, can you put in a good word for me? And I get the contract. If I wasn't under negotiation for that contract, I'm not covered, right? So it's only once you're under negotiation or actually contracting. Yes, and I think it's true that setting up the limit so that there was some provision, some period of time after a contribution would serve the interest that we've asserted even more. Congress doesn't have to go to the logical ends of its interest once it asserts one. So there have been provisions like that and they've been upheld. But as with all these interests, the further you go, the Congress's most severe danger is being struck down for over breadth. So the further you go, the more risk you potentially run of finding that it's not a substantial fit because it covers too much. But doesn't the fact that there's so much under-inclusiveness essentially fatally gut any argument that this is really directed at actual corruption because there are so many exceptions, like the one that Judge Pillard just mentioned, that would not prevent actual corruption, the only thing that this statute we could really consider it to be is the appearance of corruption. Isn't that really where we are? I don't think so. This provision continues to serve an interest in preventing quid pro quos. What is the record here on these LLCs? There's a limited record on the question. I think both parties agree that at least in some cases, it is a permissible option for individuals. Is there any evidence that when Congress acted, it knew that the ban could easily be avoided through LLCs so that there was some deviousness to Congress's action? I personally haven't found that in the case. In McCutcheon, the Supreme Court seemed loathe to speculate about the shenanigans that might be engaged in absent some evidence that this was ongoing and a problem. Well, I don't think in the 1940 debates that that issue was discussed specifically. I'm not 100% sure about that. Obviously, a lot of time has passed, and it's probably a more frequent occurrence today. No discussion in 1994? That was a change to federal. The change I think you're referring to was to whether federal employees can make contributions. There was no such thing as an LLC in the 1940s, was there? Probably not. And there's nothing in the statute about an LLC, is there? No, there's not. That's the FEC. That's your regulations, interpreting it as not covering LLCs, isn't that right? We don't have a specific regulation on that, but we have a definition of person. So if it's not the person making the... It's a statutory definition. It's a regulatory definition. That's right, that's right. There's no... I'm just asking. This definition of person, which doesn't extend to... which suggests that if you're the LLC, it doesn't mean the human being behind the LLC, is that in the statute, or is that a regulatory definition? I don't think it's... There is a definition of person in the statute. Hasn't the FEC defined an LLC as... Hasn't the FEC... Doesn't the FEC have a regulation which specifically says that an individual contractor can create an LLC and that the LLC... and that the individual is then free to make contributions? I don't believe there's a regulation specifically to that effect. Where do these LLCs come from, just so I'm clear? Everybody says you can escape the statute by setting up an LLC. They come as an operation of state law. So the statute addresses persons. So if people are setting up separate persons under state law, then the FECA's definition of person doesn't reach them. But I think the Ognebene court had it right on this question. The fact that a legislature chooses to focus on one danger of quid pro quo rather than every conceivable instance doesn't render its rationale a challenge to the credulous. So the fact that there is some means for separate legal persons to engage in this activity does not mean that the purpose isn't being furthered in some sense. And again, the corporate ban, they don't have that same opportunity to just set up an LLC. So part of the equal protection claim here is that individual contractors are worse off. But that's not really clear. Some ways that they are better off and some ways that they are worse off. One thing the challengers say is if the problem is in the contracting process, the solution is to more tightly regulate the awarding of contracts before you take the step of infringing on speech. How do you respond to that argument? Well, I think Congress has permitted to address the danger of corruption and the interest in selecting a merit-based workforce on multiple fronts and on multiple flanks. So I think Congress has done both and it's permitted to do both. There's not evidence that those provisions have completely made the interest that Congress asserted no longer serving any purpose whatsoever. For example, in New Jersey, a state contractor had made a number of contributions to try to win business to renovate the motor vehicle system. It was awarded on a competitive contract. It was $400 million. They used their contributions and their access to distort the awarding of the system through the competitive process. They didn't complete the contract well. It was over $200 million over budget and it broke down and had to be scrapped within weeks. And that was a situation where the actual contractor, the corporation, had delivered a $1,000 check to the state senate leader the day after they had submitted their proposal. They had their government relations person introduce their corporate representative in that way. This is so-and-so from the Parsons Company. They just submitted their bid in response to the request for proposals. A check from the actual contributor. So even though in that situation, the formalities of contracting had been set up to try to prevent that sort of corruption, there was a way around it. There is not evidence that those sorts of formalities make the interest in fighting corporate corruption and effective government functions completely no longer being served by the contribution ban. And New Jersey changed their rules after that. Just like in the last 10 years, a number of states have. New Jersey, Ohio, Connecticut, Hawaii, because of exactly those kind of problems. Even though many of those states do have processes for trying to make bidding. Can I ask one real-world practical question here? A series of them. How many individual federal contractors are there, roughly? Is it millions? Congress hasn't been able to get a handle on it. The parties were not able to. A lot. A lot. Individuals and many, I don't know about most, but many are former federal employees, I would imagine. And so the question is, someone's been a federal employee and has contributed and then becomes a contractor and keeps contributing without knowing the law. So this is just tangential to this case, but real-world implications. Does the government warn contractors that they're now subject to a ban on contributing? Because I imagine if not, I imagine there are a lot of unintentional violations out there. I believe there's mandatory ethics training for employees. I know for employees. This is for contractors. I believe as a general matter there are compliance measures for entities. For entities, for the individuals. Persons as well. I don't think there's clear evidence on that in the record, but I believe there is. There are measures taken to help contractors comply. And the mens rea, not knowing the law, this is probably outside your bailiwick and more Justice Department issue, but is not knowing the law, do you think, a defense to the felony charge if you don't know the law as a contractor, you've been a former federal employee,  You say, I didn't know the law prohibited that. Is that still a felony or not? No, Your Honor. So under Section 441C, in order to be a criminal violation, it would have to be a knowing and willful violation. And willful, as the Supreme Court has said, willful requires as a general proposition knowledge of the law. In the FECA context, knowing and willful is held to be correct. You have to actually know. I just wanted to clarify that that would not be drawn into this. In other words, unknowing, completely unknown. Because I imagine, maybe I'm wrong, but just thinking about this, and there's not a record in this case that we normally have, but thinking about this, one concern was completely unknown violations of this and whether that would land you in prison. That would not be a criminal violation. When the statute says it covers donations that are made directly or indirectly, if someone set up an LLC with the intent and purpose of being able to make donations that they couldn't otherwise make, would that count as indirectly? I don't think so because it's a different person making the contribution. How does indirect work without going through somebody else? Isn't that what indirect means? You're going through somebody else or something else. It could be through someone else, but if you had actually gone to the trouble of setting up a separate legal person, I don't think that's what the statute was addressing. The contribution in that situation would be direct. It would be from the individual directly to the member of Congress. I'm sorry, Your Honor? It wouldn't be indirect at all. If you set up an LLC and then the individual starts writing checks, those are direct payments to members of Congress or to politicians, right? Well, they're from the LLC. I think that part of what the work that the indirect did at the time. Are you telling me if an LLC, we don't need to spend this amount of time on LLC, but you just confused me. Are you telling me that if I set up an LLC, my LLC can contract with the government and my LLC can make contributions? No, I'm sorry, Your Honor. If the individual makes contributions, that's a different person. You're correct about that. But it's not, it's a different person. I'm having a little trouble figuring out where you get this. Now, I understand there's nothing in the statute that supports the proposition you're making. So that may mean the statute is unconstitutional, but the federal regulation that you're interpreting about LLCs is inconsistent with the statute. I mean, the statute does, and even the regulation that the plaintiffs cite, which is section 115.6, talks about the individual members of associations and corporations, but it says, talks about them in the plural. Are there any FEC rulings on LLCs or are we playing with a shadow here? There aren't any rulings in this specific context of the government contracting. I'm not sure about other contexts. A ruling with respect to a statute that says a person can't make a contribution, that's in which the FEC has ruled that an individual who is the sole member of an LLC can make it. I think there may be. I'm not sure, Your Honor. We can submit something on that if you'd like. I think there may be some indications of that in past commission histories, maybe in the advisory opinion context, but I'm not 100 percent sure. But we can file something. But are we correct? I mean, you and the plaintiffs argue that it's an equal protection case on that side of the case. They say it's too expensive to set up an LLC. You say it's not. And I assume what you both are talking about is that LLCs can contract with the government and the individual in the LLC can make contributions. That's all correct, isn't it? The individual who has set up the LLC, once it's set up and contracted with the government, the individual is then free to make political contributions. Isn't that what your debate is about on the equal protection side of this case? That's part of the debate, yes. Any further questions from the bench? Okay. Does Mr. Morrison have additional time? We'll give you another two minutes. Thank you, Your Honor. Thank you. I think the LLC answer is that LLCs are subsets of corporations. They are a type of corporation. It's the most poignant example because there is no difference between the LLC and the individual. Jonathan Tiemann's declaration, page 76 of the joint appendix, will answer that. The second point I want to make is with Judge Kavanaugh, they've been unable to determine how many federal contractors there are. I tried as hard as I could, but there are lots of them, both individuals and corporate contractors. Is it clear that that is a relatively recent development of having a large number of personal services contractors? Yes, Your Honor, and I think it's partially responsive to Congress' and the executive branch's unwillingness to have more employees, so they go out and hire contractors who are doing the same things as two of my clients are here. They're doing the same things they did before, sitting next to supervising employees. As far as the scandal in 1940 is concerned, that scandal could happen today, and it would happen today because instead of the business itself making the contributions, the business owner would make the contributions. That is exactly what this has allowed, and that's what most of the scandals are about. The $1,000 in New Jersey, anyone who's got a business with a big contract surely could afford $1,000. If you're concerned about them being very much similar to employees, it's certainly the case that in the states, political parties have subtly made clear that low-level political employees have to give money to the party if they want to keep their job, right? That's coercion, Your Honor, and that's forbidden by federal law. That is the subtlety or non-subtlety. Federal law already forbids that. Right, but so is a quid pro quo forbidden by federal law, and the Supreme Court has said that doesn't matter. That's not enough to make limits on contributions inappropriate. So we have to look for something close because we're not likely to find, as the Supreme Court said, the exact corrupt bargain, and isn't that very similar? Being from the great state of Illinois, the Supreme Court has two opinions on state parties in Illinois. One, Elrod v. Burns, one where the Democratic Party subtly made sure that only employees who made contributions to the Democratic Party could be hired by the sheriff. That was in 1976, and then in Rutan, the Republican Party did exactly the same thing 15 years later for the state government. Don't those show that parties have an incentive to try to make money, even in small amounts, from large numbers of employees by looking at who contributes and who doesn't? And if that's the case, if we take this cap off, if we take this limit off, why should we think it won't happen at the federal level as well? Well, first, Your Honor, we're dealing with parties and employees, and these are parties and contractors. Second is, employees are already permitted to make the very same contributions my clients are not permitted to make. Yes, and here is a whole new, as you said, growing group of people available to get contributions to political parties. And if we take the cap off for them, what makes us think that the parties won't take advantage of that? Well, I'm sure that the parties would solicit government contractors. We're not going to get a lot of money from contractors like my clients here, Your Honor, but they can solicit them from much bigger contractors now. And if I may, the last thing I want to say is can I just read for one second from the government's brief on page 32? Most Americans lack familiarity with the complexity of federal contracting and that they could easily view any contribution by contractors with suspicion. That's the reason that the political packs of corporate contractors, the officers of corporate contractors, the chief procurement officers, and the major shareholders of contractors in LLCs, that's what's wrong with this, that there is no explanation as to why the other protections in the Federal Election Campaign Act are not sufficient to take care of those interests. And given the substantial mismatch we have here, we ask the court to declare the statute unconstitutional as applied to these individuals. Other questions from the panel? We'll take the matter under submission. Thanks both sides. Thank you, Your Honor. Thank you. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. That might be it. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor.